*In re* ASHLEY F., a Minor (The People of the State of Illinois, Respondent-Appellant, v. Diana F., Respondent-Appellee).

First District (3rd Division)   No. 1—93—0178

Opinion filed July 20, 1994.

420

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy and John Uglietta, of counsel), for appellant.

Marvin J. Leavitt and Gayle M. Schor, both of Leavitt & Associates, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Following an adjudicatory hearing, the trial court found that there was no probable cause to believe that the minor, Ashley F., had been neglected. The court entered a directed verdict in favor of Ashley F.'s mother, Diana F., and dismissed the petition for the adjudication of wardship.

The office of the Public Guardian filed this appeal on behalf of Ashley F. The guardian *ad litem* asserts that (1) the trial court's directed verdict and finding were against the manifest weight of the evidence; (2) the trial court's directed verdict and dismissal of the petition were contrary to Ashley F.'s best interests; and (3) the trial court abused its discretion in denying Ashley F.'s motion to reconsider. Based on the following reasons, we affirm the circuit court's judgment.

On September 11, 1992, the trial court held a temporary custody hearing pursuant to a petition for adjudication of wardship for Ashley F., who was born on June 28, 1992. The petition alleged that Ashley F. was neglected "in that [her] environment is injurious to *** her welfare in violation of Illinois Revised Statutes (1989), Chapter 37, paragraph 802—3(1)(b)." The trial court appointed the Cook County public guardian as guardian *ad litem* and attorney for Ashley F.

The only testimony came from Sherry Gross, an investigator with the Department of Children and Family Services (DCFS). Gross testified that she was assigned to Ashley F.'s case on September 1, 1992, after receiving information that the infant had suffered a fractured skull on August 31, 1992.

Gross went to Rush Northshore Hospital in Skokie, where she spoke with Dr. Jeffery Skinner, the hospital's emergency room physician. Dr. Skinner, who had treated Ashley F., told Gross that Ashley F. suffered two fractures on the left side of her skull when she rolled off a bed and hit a carpeted floor. After Gross asked whether a two-month-old infant can have two fractures by hitting her head in such a manner, Dr. Skinner told her that it can happen even though it is highly unlikely. Dr. Skinner also told Gross that most two-month-old infants cannot lie on their sides, but that it is possible.

Gross also spoke to Dr. Galon, who was the family's private physician. Dr. Galon told Gross that two fractures were highly suspicious and that it was unlikely that a two-month-old would roll, but it was possible. Nevertheless, Dr. Galon did not think that Ashley F. was abused because "it was not in the mother's personality." Because Diana F. was a very good mother who was very concerned about her child, Dr. Galon believed that Ashley F.'s injury was an accident.

A report from Dr. Galon was read to the court. It stated:
"The incident that resulted in injury to Ashley on October 31, 1992 [sic] was an accident. I do not believe that Diane F[ ] is in any way neglectful or abusive."

Gross also spoke with Dr. Goldstein, who was Dr. Galon's partner. Dr. Goldstein had seen Ashley F. on the morning of September 1, 1992, at the hospital. According to Dr. Goldstein, it was possible but unlikely that a two-month-old infant could roll off a bed. He explained that when a child that age does roll, he or she usually has exceptional muscle tone, which Ashley F. did not have.

Diana F. told Gross that she was in the room when her daughter was injured. She had put Ashley F. on a twin bed in order to change her diaper. The infant was lying on her left side with a gown propped up behind her. She was about a foot from the edge of the bed. When Diana F. turned away to get a diaper, she heard the baby cry. She turned and saw Ashley F. lying on her back on the floor. Gross hypothesized that the infant would have had to roll forward to fall off the bed.

Gross testified that she saw Diana F. have two angry outbursts when she was told that Gross was going to court to get a protective order. In addition, Gross said that Diana F. was not willing to take

advantage of parenting classes and homemaker services even though she had initially been very cooperative. Diana F. was concerned because she was going through a divorce and was afraid that Ashley F.'s father would get custody if the case were in juvenile court.

While Ashley F. was in the hospital, her mother was constantly at the hospital, even staying overnight. Ashley F. was taken into protective custody for four hours after she was released from the hospital, and then returned to her mother.

Prior to the court hearing, the guardian *ad litem* and the assistant State's Attorney urged Gross to speak with Dr. Demetria Soter of Cook County Hospital concerning Ashley F.'s injuries. Dr. Soter stated that it was impossible for a child to receive two fractures from falling onto a carpet.

In addition, Gross stated that the Skokie police were notified by the hospital. Based on their interviews with the mother and the treating doctors, they decided not to pursue the case.

Gross concluded that she had concerns for Ashley F.'s safety because it was not clear what had happened. Gross explained that initially she did not intend to file a petition for protective custody. Instead, she tried to involve the Family First program to provide intensive services. When she was unsuccessful, she filed for a protective order. Subsequently, she filed a petition for adjudication of wardship at the urging of the guardian *ad litem* and assistant State's Attorney.

Following Gross's testimony, Diana F.'s attorney moved for a directed verdict on the basis that there was no evidence of abuse or neglect. The trial court made a finding of no probable cause based on insufficient evidence and dismissed the petition.

Subsequently, the guardian *ad litem* filed an emergency motion to preserve evidence. The guardian *ad litem* requested that the court order Diana F. to cooperate with testing recommended by Dr. Mary Ann Radkowski, a pediatric radiologist and expert in the diagnosis of child abuse who had reviewed Ashley F.'s emergency room medical records. Dr. Radkowski believed that it was crucial that Ashley F. receive additional testing, including a skeletal survey and bone scan, in order to adequately assess her injuries. The procedure needed to be done as soon as possible after the injury because the more time that elapsed, the less helpful the results.

The trial court concluded that the guardian *ad litem* was attempting to obtain new evidence that was available at the time of the hearing in addition to preserving evidence before Ashley F.'s condition changed. Consequently, the trial court denied the motion.

A month later, the trial court held a hearing on the guardian *ad*

*litem*'s motion to reconsider, which asserted that the trial court erred in applying the law and that new evidence was available. The court denied the motion because it had considered and done everything possible to protect Ashley F.'s best interests. Since the evidence presented did not show that the injury was intentional, the trial court found that it would not be in Ashley F.'s best interests to remove her from her home or to grant an order of protection. Finally, the trial court concluded that the guardian *ad litem*'s *prima facie* case had been overcome.

On appeal, the guardian *ad litem* asserts that the trial court's finding of no probable cause was against the manifest weight of the evidence because the nature of Ashley F.'s injuries and the medical opinions of four doctors established a *prima facie* case of neglect. *Prima facie* evidence of abuse or neglect is:

> "[p]roof of injuries sustained by a minor or of the condition of a minor of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent, custodian or guardian ***." 705 ILCS 405/2—18(2)(e) (West 1992).

The guardian *ad litem* further asserts that the trial court's directed verdict and dismissal of Ashley F.'s case were contrary to her best interests because (1) the evidence regarding the cause of Ashley F.'s injuries was incomplete; and (2) the trial court imposed a higher burden of proof than probable cause entails by requiring the minor to show that it was impossible that she was injured as her mother had described. Moreover, the guardian *ad litem* claims that the trial court was prejudiced against Dr. Soter and her opinions. The guardian *ad litem* maintains that the trial court should have entered a finding of probable cause and scheduled a trial, where further evidence could have been presented and an adequate determination of whether Ashley F. was neglected could be made.

The guardian *ad litem* argues that the juvenile court abdicated its duty to investigate the matter so that it could gather adequate information to properly fulfill its role as *parens patriae* and to insure that Ashley F. was protected. To support that contention, the guardian *ad litem* relies on section 1—2(2) of the Juvenile Court Act of 1987 (705 ILCS 405/1—2(2) (West 1992)), which directs the court to fully "gather information bearing upon the current condition and future welfare of persons subject to this Act," and *In re Patricia S.* (1991), 222 Ill. App. 3d 585, 591, 584 N.E.2d 270, which states that the juvenile court must act affirmatively and aggressively to ferret out information bearing on the best interests of the minor.

*In re Patricia S.* is inapplicable because the juvenile court in the case improperly entered an order granting DCFS custody without

determining whether DCFS had made reasonable efforts to prevent or eliminate removal of the child or whether there was a good reason for not doing so. (*In re Patricia S.*, 222 Ill. App. 3d at 592.) Even though the parties did not present evidence of DCFS's efforts because the minors involved agreed that it was in their best interests to be removed from their mother's custody, the appellate court instructed that the juvenile court could not sit back passively. *In re Patricia S.*, 222 Ill. App. 3d at 592.

That does not mean that the trial court must go out and do its own investigation or that the adjudicatory hearing should go on indefinitely until the State gathers enough evidence to establish probable cause. It merely means that the court cannot abdicate its duty to make a determination because the parties do not raise the issue.

In all child custody proceedings under the Juvenile Court Act (Act) (705 ILCS 405/1—1 *et seq.* (West 1992)), the trial court's primary concern is the best interests of the child involved. (*In re S.D.* (1991), 220 Ill. App. 3d 498, 502, 581 N.E.2d 158.) In a temporary custody hearing, the trial court first decides whether there is probable cause to believe that the minor is abused, neglected, or dependent. (705 ILCS 405/2—10(2) (West 1992).) If the court finds probable cause, it must then determine whether it is a matter of urgent and immediate necessity for the protection of the minor to remove her from her home. (705 ILCS 405/2—10(2) (West 1992).) If, however, the trial court finds that there is no probable cause to believe the child is neglected, it must dismiss the petition. 705 ILCS 405/2—10(1) (West 1992).

The Act provides that a minor is neglected if her environment is injurious to her welfare. (705 ILCS 405/2—3(1)(b) (West 1992).) Neglect is the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duties. (*In re Stilley* (1977), 66 Ill. 2d 515, 520, 363 N.E.2d 820; *In re S.D.*, 220 Ill. App. 3d at 502, 581 N.E.2d at 161.) Because an injurious environment is an amorphous concept that cannot be defined with particularity, each case should be reviewed considering its specific circumstances. *In re S.D.*, 220 Ill. App. 3d at 502, 581 N.E.2d at 161.

The only witness in this case was Sherry Gross, who was concerned about Ashley F.'s safety because it was not clear what had happened. Gross had asked Dr. Skinner, the treating emergency room physician, whether a two-month-old child could lie on her side and whether she could have two skull fractures by hitting her head on carpeting. To both questions, Dr. Skinner replied that it was unlikely but possible.

Gross also spoke with Dr. Galon, who was the family physician, and his partner, Dr. Goldstein, who had treated Ashley F. after her injury. Both doctors stated that it was possible, but unlikely, that a two-month-old child could lie on her side and roll off a bed.

In addition, Dr. Galon stated that two fractures were highly suspicious. Nevertheless, it was his opinion that Ashley F.'s injury had been an accident. Dr. Galon based that opinion on his previous observations of Ashley F. with her mother.

Before the case was presented, the guardian *ad litem*'s attorney and the assistant State's Attorney urged Gross to call Dr. Soter as an expert witness. Dr. Soter told Gross that it was impossible for a child to receive two fractures from falling onto a carpet. Under the circumstances, the trial court properly refused to take notice of Dr. Soter's expertise because the State and the guardian *ad litem* attempted to offer into evidence the ultimate conclusion of fact through a hearsay witness who neither examined Ashley F. nor read any medical reports.

When making its determination regarding neglect, the trial court has wide discretion. (*In re M.B.* (1992), 241 Ill. App. 3d 697, 705, 609 N.E.2d 731.) The court's findings, which are based on its opportunity to observe the demeanor and conduct of the parties and witnesses, must be given great weight. (*In re W.B.* (1991), 213 Ill. App. 3d 274, 282, 571 N.E.2d 1120.) Furthermore, its determination will not be disturbed unless it is against the manifest weight of the evidence. *In re M.B.*, 241 Ill. App. 3d at 705.

●1 We conclude that the trial court's finding of no probable cause, directed verdict in favor of Diana F., and dismissal of the petition were not against the manifest weight of the evidence. Although the nature of Ashley F.'s injuries established *prima facie* evidence of neglect, the trial court properly found that the *prima facie* case was overcome. In addition, we find that the trial court considered Ashley F.'s best interests in making its determination.

Next, the guardian *ad litem* asserts that the trial court abused its discretion in denying the minor's motion to reconsider, especially since the trial court had indicated the need for an expert opinion. The guardian *ad litem* contends that Dr. Radkowski would have testified to the near impossibility of Diana F.'s explanation.

The guardian *ad litem* further argues that she used due diligence after the temporary custody hearing. Since the guardian *ad litem* was appointed on the day of the hearing, she was unable to investigate the case beforehand. After the hearing, however, she continued her investigation. As a result, she offered Dr. Radkowski's expert opinion in the motion to reconsider.

In response, Diana F. asserts that no new evidence was presented to the trial court in the motion to reconsider. Instead, Diana F. contends that the guardian *ad litem* attempted to present a new witness, who neither examined Ashley F. nor contacted the treating physicians.

Furthermore, Diana F. maintains that the guardian *ad litem* did not use due diligence. Either the guardian *ad litem* or the State could have requested a continuance to obtain medical records or DCFS could have taken temporary protective custody for 48 hours before a temporary custody hearing. (See 705 ILCS 405/2—9(1) (West 1992).) Diana F. concludes that it is not the trial court's fault that adequate evidence was not presented at the hearing.

The purpose of a motion to reconsider is to bring to the court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence that was not available at the time of the hearing. (*Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 987, 518 N.E.2d 424.) To justify a rehearing on the basis of newly discovered evidence, there must be a showing of due diligence and a demonstration that justice has not been done. (*Drehle v. Fleming* (1970), 129 Ill. App. 2d 166, 172, 263 N.E.2d 348.) The trial court's decision will not be reversed absent an abuse of discretion. *In re M.B.*, 241 Ill. App. 3d at 709.

●2 The trial court's denial of the motion to reconsider was not an abuse of discretion. The evidence the guardian *ad litem* asked to present was merely a new witness who would present cumulative evidence. Her testimony would not have been different from that of the three treating physicians. Furthermore, there was no showing of due diligence. Although it appears that the guardian *ad litem* and the DCFS investigator disagreed regarding how to proceed with this case, that is not a basis for the trial court to reconsider its ruling.

Next, the guardian *ad litem* contends that the trial court erred in applying existing law. The guardian *ad litem* argues that the trial court improperly required Ashley F. to prove that she could not possibly have been injured in the manner her mother described, which is a stricter standard than the preponderance of the evidence standard applicable at trial. The guardian *ad litem* maintains that the trial court should have corrected those errors by granting the motion to reconsider and vacating its order finding no probable cause and dismissing her case.

●3 The guardian *ad litem*'s argument is baseless. The trial court applied the proper standard to determine whether there was probable cause and considered Ashley F.'s best interests. The trial court made its determination because the *prima facie* evidence presented by Ashley F.'s injuries had been overcome.

Based on the foregoing, we affirm the circuit court judgment.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.