THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID FULTON, Defendant-Appellant.

First District (3rd Division)   No. 1—95—3938

Opinion filed June 30, 1997.—Rehearing denied August 7, 1997.

Frederick F. Cohn, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

After a bench trial, the defendant, David Fulton, was found guilty of possession of cocaine and sentenced to three years' probation and six months in prison. Police discovered the cocaine after entering the defendant's car following his arrest for driving without a license. The defendant contends, among other things, that the trial judge erred in denying his motion to reconsider the denial of his motion to suppress the cocaine. Because the police lacked authority to enter the car and seize the property therein, the judge erred as a matter of law in denying the defendant's motion to suppress. We find, therefore, that his failure to grant the motion on that ground constituted an abuse of discretion. We reverse the defendant's conviction.

At a hearing on the defendant's motion to suppress, the defendant testified that on March 24, 1993, his father had asked him to retrieve the father's car and drive it home. The defendant did so, and, at around 8 p.m., he had been driving the car for only a few minutes

when he stopped at a red light. The defendant stated that he waited for two minutes, but the light did not change. Believing that it was broken, he proceeded through the red light. Soon after, police stopped his vehicle. The defendant testified that he immediately produced a traffic citation and his State of Illinois identification card in lieu of his driver's license. Officer Michael Jedlowski contradicted the defendant, asserting that the defendant had not produced a traffic citation until he arrived at the police station. The defendant also could not produce proof of insurance.

The remaining facts are not in dispute. The officers arrested the defendant for driving without a valid driver's license and without proof of insurance. Before ushering the defendant into their car, the officers patted him down. They reached into the defendant's pockets and removed $400 to $500. Without asking for the defendant's consent, the officers also searched the interior of the defendant's car. This search included at least the immediate area where the defendant had been. Following this search, Officer Jedlowski got into the defendant's car and began driving it to the police station. Officer Jedlowski testified that he did this to secure the car. Officer Jedlowski drove a short while before noticing a clear plastic bag protruding from an air vent. He stopped the car to investigate, pulled the vent out and discovered the bag containing cocaine.

Based on this evidence, the defendant initially argued that the cocaine should be suppressed because the officers did not have a warrant to search the car. Despite the defendant's unrebutted testimony that the officers never asked for his permission to search the car, as well as his testimony that he produced a traffic citation and a state identification card at the scene, the judge denied the motion to suppress and issued findings inconsistent with the record in that he stated the defendant did not testify that he produced a ticket at the scene:

> "There is no testimony, as I understand it, from the defendant that he produced a ticket at the time of the arrest. Just that he was driving on a ticket. It would seem that no valid license being produced and the defendant then having to be in the status of an arrestee, not allowed to receive a ticket or summons and go on his way, but having to be brought to the station for bond purposes, that the officer had a right to enter the car and bring the car down to the station where in such trip he discovered the drugs open from the vent."

Sometime later, but before trial, the defendant filed a motion for reconsideration, contending that this court's decision in *People v. Buffo*, 202 Ill. App. 3d 240, 242, 559 N.E.2d 908 (1990), required the

judge to have granted the motion. The judge denied this motion on its merits, ruling that *Buffo* was not controlling.

■ We will reverse a trial judge's decision to deny a motion to reconsider only if it constituted an abuse of discretion. *In re Ashley F.*, 265 Ill. App. 3d 419, 638 N.E.2d 368 (1994). The purpose of a motion to reconsider is to bring to the court's attention errors in the court's previous application of existing law. *Ashley F.*, 265 Ill. App. 3d at 426. Furthermore, although we ordinarily review a trial judge's ruling on a motion to suppress to determine whether it was manifestly erroneous, where the facts are not in dispute, and the question as to the reasonableness of a search can be characterized as one of law, we will review the ruling *de novo. People v. James*, 163 Ill. 2d 302, 310, 645 N.E.2d 195 (1994). Because the facts surrounding the officer's entry into the defendant's car are not in dispute, we review the trial judge's decisions as a matter of law.

■ Both the United States and Illinois Constitutions protect every person from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The primary purpose of these provisions is "to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings" (*James*, 163 Ill. 2d at 311), while according " 'fair leeway for enforcing the law in the community's protection.' " *James*, 163 Ill. 2d at 311, quoting *Dunaway v. New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 833, 99 S. Ct. 2248, 2254 (1979).

■ Generally, searches and seizures are only reasonable if the government has first obtained a warrant authorizing the action. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990). Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. *** [T]he burden is on those seeking the exemption to show the need for it." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971). Consent can render a search reasonable. *Rodriguez*, 497 U.S. at 183-84, 111 L. Ed. 2d at 158, 110 S. Ct. at 2799. A search incident to a lawful arrest also does not require a warrant. *Rodriguez*, 497 U.S. at 185, 111 L. Ed. 2d at 159, 110 S. Ct. at 2799. However, the scope of such a search must be "strictly tied to and justified by" the circumstances that led to the arrest. *Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904, 88 S. Ct. 1868, 1878 (1968). Thus, the police may search the arrestee and areas within his reach to prevent him from obtaining weapons or destroying evidence. *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969).

■ We do not consider that general principles of fourth amend-

ment jurisprudence validate the officer's actions in this case. The record does not show, and the State does not claim, that the officers here had either a warrant, probable cause or the defendant's consent to conduct a search. Nonetheless, the defendant's car was searched twice. First, Officer Jedlowski looked into the defendant's car and felt for weapons on the seat and the floor. This search was arguably incident to a lawful arrest and was never at issue in this case. The defendant sought to suppress evidence gained during the second search, conducted by the same officer after he entered the defendant's car without permission and drove it away from the area in which the arrest occurred.

The State argues that exigent circumstances—the need to secure the defendant's car and the need to ensure the safety of the roadway by removing the defendant's car from the spot where he parked it— justified the officer's intrusion into the defendant's vehicle. We note that the record contains no evidence establishing that the spot where the defendant curbed his car was dangerous or illegal.

In *People v. Buffo*, 202 Ill. App. 3d 240, 559 N.E.2d 908 (1990), the defendant was lawfully stopped by the police for a routine traffic violation. After obtaining the defendant's driver's license, the officer ran the defendant's name through a mobile computer and learned that his license had been suspended. The officer arrested the defendant and, because the defendant's car was parked illegally, got into the car to back it into a legal parking spot. Once in the car, the officer found a gun on the floor. The trial court granted the defendant's motion to suppress the gun, ruling that the officer had no right to enter the defendant's vehicle without first either obtaining the defendant's consent or assuring that someone else could not move the vehicle for him. On appeal, the State asserted that the officer had a right to be in the defendant's vehicle based on the need to secure the defendant's car and the need to ensure the safety of the public highways by removing the defendant's car from its illegally parked location near a traffic light. Justice Freeman, writing for this court, stated:

> "[T]he State completely ignores that it was [the officer's] failure, in the first place, to ensure that defendant parked his vehicle legally before stopping him that created the allegedly exigent circumstance upon which it now relies to justify [the officer's] subsequent entry into the vehicle. Given that fact, a finding that [the officer] was justified by exigent circumstances in entering defendant's car would provide the police an incentive to create exigent circumstances in order to validate other impermissible searches and seizures in the future. We do not believe that the

exigent circumstances exception to the fourth amendment's search warrant requirement should be so perverted.

In this regard, it may be argued that [the officer] did not know that an arrest would result from an otherwise routine traffic stop conducted for the purpose of issuing a citation and that, absent such knowledge, his failure to have required defendant to stop at a legal parking space should not invalidate his entry into the stopped vehicle after an arrest became necessary. However, we believe that the possibility of an arrest resulting from a routine traffic stop is sufficiently high that the police should pull a vehicle over to a legal parking space or, at least, to a point in the road at which the vehicle will not obstruct traffic. Having failed to do so, [the officer] could not take advantage of that failure to enter defendant's car on the pretext of an exigent circumstance." *Buffo*, 202 Ill. App. 3d at 242.

We find the significant facts in *Buffo* indistinguishable from those in this case. Here, as in *Buffo*, the defendant was stopped for a routine traffic offense. He was subsequently lawfully arrested for an offense related to his operation of the vehicle. Police did not suspect that the defendant was involved in any unlawful activity beyond driving without a license. Without asking the defendant for permission or inquiring what the defendant wanted done with his vehicle, the officer got in the car and drove it away, subsequently discovering and seizing the contraband at issue.

The trial judge denied the defendant's motion to suppress calling *Buffo* "a case unto itself ***. [*Buffo*] cited no other case." The State argues that *Buffo* was "an ill-conceived and illogical decision without any reliance on common sense" and "an aberration." The State considers the holding in *Buffo* to place upon the police officer the "onus *** to insure that during a traffic stop the driver of the vehicle pulls into a legal parking space." The State contends this holding is "ridiculous considering that there are numerous areas in the City of Chicago which are extremely congested and street parking is at a premium, and areas where there is no street parking ***. Are police officers now *** going to be required to follow a vehicle for what could be several blocks until a lawful parking space can be obtained?"

We disagree with the State's characterization of the holding in *Buffo*. *Buffo* stands solely for the proposition that a police officer cannot, by stopping a car for a routine violation which results in arrest, create the exigent circumstance that permits him to enter the car. Therefore, absent consent or other considerations not present here or in *Buffo*, the officer's search of the defendant's vehicle cannot be justified. We consider the decision in *Buffo* to be required by a citizen's

right to be free from unwarranted intrusions into his personal freedom. As this court has recognized, "[s]topping a vehicle for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle. The officer must reasonably believe that he is confronting a situation more serious than a routine traffic violation." *People v. Penny*, 188 Ill. App. 3d 499, 502, 544 N.E.2d 1015 (1989).

We have noted that, in a finding directly contradicted by the record, the trial judge asserted that there had been no testimony by the defendant that he produced a ticket at the scene. It is immaterial whether the defendant merely passed through a red light or was driving on a ticket that he was momentarily unable to produce when stopped. Neither circumstance, alone or together, justified the nature of the intrusion that occurred here. Because the search was wrongful, the evidence seized ought to have been suppressed.

For the foregoing reasons, we reverse the trial judge's ruling denying the defendant's motion to suppress. Because the State cannot prevail on remand without the evidence that we have held should have been suppressed, we also reverse his conviction and sentence outright. *People v. Evans*, 259 Ill. App. 3d 650, 659, 631 N.E.2d 872 (1994). The remaining issues raised by the defendant are rendered moot by our decision.

Reversed.

COUSINS, P.J., and CAHILL, J., concur.