In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2041

United States of America,

Plaintiff-Appellee,

v.


Rodriguez D. Jones,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-CR-30070 Jeanne E. Scott, Judge.

Argued November 30, 2001--Decided December 28, 2001



   Before Flaum, Chief Judge, and Cudahy and
Manion, Circuit Judges.

   Flaum, Chief Judge.  A jury convicted
Rodriguez Jones of conspiring to
distribute crack cocaine. Jones appeals,
arguing that the government failed to
prove a conspiracy for the time period
alleged in the indictment, and that the
district court erred in denying a motion
to suppress evidence. For the reasons
stated herein, we affirm.

I.  Background

   Jones was a Chicago resident and a
member of the Gangster Disciples street
gang. In January 1999, Jones asked Huey
Whitley if he would join him in selling
crack cocaine in Springfield, Illinois,
where a better opportunity existed to
deal crack. Whitley agreed, and the two
relocated to Springfield. On numerous
occasions, Jones and Whitley traveled to
Chicago, where they purchased crack
cocaine, transported it back to
Springfield, and distributed it for sale.
Jones and Whitley decided that their
venture was worthy of expansion, and they
began pooling money with two other
individuals, Casey Jones and McCall
Cleveland. Jones and Whitley took the
pooled funds to Chicago, where they
obtained crack cocaine. Upon return to

Springfield, Jones divided the crack among himself, Whitley, Cleveland and Casey Jones.

In March 1999, law enforcement officers began investigating Jones and his cohorts. During that month, Springfield police officers searched the trash of the residence where the four individuals conducted their drug dealing business. This search revealed various drug distribution paraphernalia, including 62 plastic bags, some of which contained cocaine residue. Several days later, officers stopped Jones for a traffic violation. A search of the automobile produced a loaded .22 caliber pistol. The officers arrested Jones and subsequently performed a search incident to the arrest, which revealed approximately $7,000 in cash stashed in Jones's shoe.

Despite his encounter with authorities, and possibly as a result of a personal conflict with Whitley, Jones decided to recruit additional help to continue his business. He contacted Gabriel Folks, Jonathan Norris and Denver Wheeler and asked them to sell crack cocaine in Springfield. Once there, the four men adhered to Jones's earlier practices, traveling to Chicago to purchase crack and returning to Springfield to sell it. Unfortunately for Jones, law enforcement authorities adhered to their earlier practices as well, searching trash bags retrieved from a residence where drug dealing activity occurred and subsequently executing a search warrant on the residence. This time, officers seized a loaded revolver, approximately 80 grams of crack cocaine, a digital scale, several varieties of plastic bags, and various documents containing Jones's name. Officers immediately arrested Folks and Norris who were in the house during the search, and Norris agreed to cooperate with the government.

In October 1999, Jones began a relationship with Tonya Gephardt, who had previously dated Charles Cleveland. During her relationship with Cleveland, Gephardt had met Jones and also had witnessed the sale of crack cocaine. From October 1999 through January 2000, Gephardt and Jones traveled to Chicago once or twice per week to purchase crack cocaine for distribution in Springfield. On return trips to Springfield, Jones asked Gephardt to conceal the crack

cocaine in her vagina, and Gephardt complied with this request. Gephardt also accompanied Jones when he sold crack throughout Springfield.

Although his initial partners had been arrested, Jones continued dealing until December 10, 1999. On that day, FBI Special Agent Steve Bennet was conducting surveillance when he observed Jones run a stop sign and turn without signaling. Springfield police officers then stopped Jones's car, determined that he did not have proper proof of insurance and issued several citations for the traffic violations. Officers also requested a certified canine unit, which arrived on the scene within approximately 13 minutes. When the canine unit arrived, officers noticed that Jones had curbed his car near several puddles, which would impede the dog's movement around the car. Rather than force the dog to traipse through puddles, a member of the Springfield Police Department entered Jones's automobile and moved it forward approximately five feet. The drug-sniffing dog then cased the exterior of the vehicle and alerted officers to the presence of narcotics. A search of this particular area of the car revealed a small amount of marijuana. Officers arrested Jones and conducted a search incident to the arrest, finding approximately $3,000 in Jones's shoe.

A grand jury indicted Jones on September 8, 2000, and charged him with conspiracy to distribute crack cocaine. The indictment alleged that the conspiracy continued until at least January 2000. Jones moved to suppress evidence related to the December 10 traffic stop, arguing that the officer illegally searched Jones's vehicle when he moved it to accommodate the canine unit. Following a hearing, the district court denied the motion, acknowledging that the entry into the vehicle was most likely improper, but stating that the search produced no evidence. Only after the drug-sniffing dog produced probable cause did officers search Jones's vehicle.

At trial, the government presented testimony from several witnesses who had participated in the conspiracy, including Wheeler, Norris, Whitley and Gephardt. Jones moved to strike Gephardt's testimony in its entirety, maintaining

that the events she described necessarily occurred after the termination of the conspiracy because all of the co-conspirators were incarcerated or cooperating with the government by June 1999. Jones argued that the government introduced Gephardt's testimony to extend the length of the conspiracy, thus allowing the prosecution to admit theevidence from the December 10 traffic stop. The district court denied Jones's motion to strike. The jury returned a guilty verdict, and Jones appeals.

II.  Discussion

Jones raises two issues on appeal. First, he claims that the government failed to prove a single conspiracy that lasted beyond June 1999. If the conspiracy ended in June 1999, Jones reasons, then admitting Gephardt's testimony was so prejudicial as to warrant a new trial. Second, Jones contends that the trial court improperly denied his motion to suppress evidence stemming from the December 10 traffic stop. We address each issue below.

A. Alleged Variance Between Indictment and Proof at Trial

Jones first argues that the government never established beyond a reasonable doubt that Jones was a member of a conspiracy to distribute crack cocaine for the entire period alleged in the indictment, that is, until January 2000. According to Jones, two prejudicial consequences flow from this expansion of the length of the conspiracy: (1) it allowed the government to introduce Gephardt's testimony, which should have been treated as a wholly separate conspiracy; and (2) it enabled the government to introduce the evidence obtained during the December 10, 1999 traffic stop.

Generally, a defendant claiming a variance between the indictment and the proof at trial "will succeed in obtaining reversal of his conviction only if he establishes that (1) the evidence presented at trial was insufficient to support the jury's finding of a single conspiracy, and (2) he was prejudiced by the variance." United States v. Mojica, 185 F.3d 780, 786 (7th Cir. 1999)

(quoting United States v. Curtis, 37 F.3d 301, 305 (7th Cir. 1994)). We are unable to agree that the government failed to introduce evidence supporting a single conspiracy. Moreover, even if Jones did engage in two separate conspiracies-- which he did not--any alleged error was harmless given the overwhelming evidence against him.

Initially, the government provided sufficient evidence to prove a single conspiracy. In defining a conspiracy, this Court looks to "the nature of the agreement." United States v. Marhsall, 985 F.2d 901, 907 (7th Cir. 1993). So long as the evidence demonstrates that the co-conspirators embraced a common criminal objective, a single conspiracy exists, even if the parties do not know one or another and do not participate in every aspect of the scheme. See United States v. Magana, 118 F.3d 1173, 1186 (7th Cir. 1997) (citing United States v. Briscoe, 896 F.2d 1476, 1507 (7th Cir. 1990)). In contrast, multiple conspiracies exist when there are separate agreements that effectuate distinct purposes. United States v. Thornton, 197 F.3d 241, 254 (7th Cir. 1999).

In this case, there was ample evidence to support the jury's finding of a single conspiracy. Jones does not dispute the fact that the government provided sufficient evidence to prove a conspiracy for the period ending in May 1999. In fact, in his brief, Jones states that "the evidence adduced at trial, viewed in the light most favorable to the government, established that the defendant participated in a conspiracy to distribute cocaine through May 1999." However, according to Jones, the only evidence of a conspiracy from June 1999 through January 2000 derives from Tonya Gephardt's testimony, which the district court improperly admitted over Jones's objection. Jones notes that by June 1999 Jonathan Norris, Denver Wheeler and Gabriel Folks either were incarcerated or had agreed to cooperate with the government. As a result, Jones claims that all of his co-conspirators necessarily withdrew from the conspiracy by the end of 1999.

Jones bases his assertion on the incorrect premise that Norris, Wheeler

and Folks were the only co-conspirators involved in Jones's scheme. The indictment against Jones specified only that he conspired with "others" to distribute crack cocaine, which certainly does not mean that the conspiracy could not involve individuals other than Norris, Wheeler and Folks. Indeed, the evidence at trial proved that Huey Whitley, Casey Jones and McCall Cleveland participated in the conspiracy as well. So, too, did Tonya Gephardt, who traveled with Jones to Chicago, hid crack cocaine in her vagina on the return trip, and accompanied Jones while he sold crack in Springfield.

Faced with this testimony, Jones contends that the government conceded during sentencing that Tonya Gephardt was not a member of the conspiracy. Jones maintains that this concession necessarily precludes a finding of criminal activity beyond June 1999 because Gephardt provided the only testimony regarding the conspiracy past that time. This argument requires further explanation. United States Sentencing Guideline sec.3B1.1 enhances a sentence when the conspiracy involved five or more participants. At sentencing, the prosecutor noted that the Probation Office applied a four level enhancement based upon sec.3B1.1 because the conspiracy involved more than five individuals. The prosecutor acknowledged that the evidence at trial did not necessarily establish that one individual, Huey Whitley, was a member of the conspiracy. Because Whitley was one of the individuals counted in the probation report, and because the enhancement did not affect the sentencing range, the prosecutor stated:

I know there was testimony at the trial that [other individuals] were involved in the offense, but there certainly wasn't as much detail with respect to their particular role like Mr. Wheeler and Mr. Folks and Mr. Norris. And while I think it is certainly reasonable to come to that four level enhancement, Your Honor, given that we're talking about a life sentence here, my thought was that to be as cautious as possible, two levels would certainly be more than sound, and that's why I came to that conclusion.

Sent. Tr. At 8-9. This is hardly a

concession that Gephardt (or others) did not participate in the conspiracy. While the government never formally charged Gephardt, she testified in some detail that Jones continued his practice of traveling to Chicago, purchasing crack, and distributing it in Springfield. Thus, the jury's finding is not "insufficient to support the jury's finding of a single conspiracy. Mojica, 185 F.3d at 786.

While we hold that the evidence was sufficient to prove a single conspiracy, we also note that any alleged error in this case was harmless. Jones's allegation that Gephardt's testimony prejudiced him does not withstand scrutiny. Despite Gephardt's testimony, the jury considered the following: testimony from Wheeler, Norris and Whitley, recorded conversations between Jones and Norris, evidence from two traffic stops, and physical evidence seized during the searches of residences where Jones dealt drugs. In short, the evidence against Jones during the period between March 1999 and June 1999 was overwhelming, and there can be no question that Jones participated in a conspiracy to deal crack cocaine. See United States v. Monzon, 869 F.2d 338, 345 (7th Cir. 1989). As a result, Jones cannot establish that he suffered any prejudice from the alleged error. See United States v. Noble, 754 F.2d 1324, 1330 (7th Cir. 1985).

B.   Denial of Motion to Suppress

Jones also argues that the district court erred in denying his motion to suppress evidence seized during the December 10, 1999 traffic stop. Jones maintains that the officer's entry into his vehicle was an illegal search, and the district court should have suppressed all evidence subsequently obtained. In support of this proposition, Jones relies exclusively on People v. Fulton, 683 N.E.2d 154 (Ill. App. Ct. 1997). In that case, officers stopped the defendant for a traffic violation and arrested him for driving without a valid license and without proof of insurance. The defendant did not consent to a search of the vehicle, but officers searched the interior of the defendant's car. After that initial search, one officer entered the vehicle, drove it to the police

station and noticed a clear plastic bag protruding from the air vent. He removed the vent and discovered a bag containing cocaine. Id. at 156. In reversing the trial court's denial of defendant's motion to suppress, the Illinois Appellate Court held that the officers did not have a warrant, probable cause, or the defendant's consent to search the car. Id. at 157. Moreover, the court refused to accept the State's "exigent circumstances" argument, noting that the record contained no evidence that the location where the defendant curbed his car was dangerous or illegal. Id.

Beyond the limited precedential value of Fulton before this Court, that case is distinguishable from the present circumstances in one critical respect. The officers in this case had probable cause to search the particular area of the vehicle once the canine alerted officers to the presence of narcotics. See United States v. Ward, 144 F.3d 1024, 1031 (7th Cir. 1998) ("The DEA did not intrude upon Ward's privacy interest by opening the bag until after the canine had alerted to the bag, supplying probable cause for the warrant which authorized a search of the bag's contents."). Thus, unlike the search in Fulton, the officers here clearly had probable cause to search Jones's vehicle because the canine unit detected the presence of marijuana. The initial "search" (if it even was a search) produced no evidence whatsoever. The Fourth Amendment prohibits only those searches that are unreasonable. Illinois v. Rodriguez, 497 U.S. 177, 183 (1990). While it is true that the district court noted that the officer's entry into Jones's vehicle was "improper," that is not the search that this Court must examine for reasonableness. Instead, we must focus on the limited search that occurred after the canine unit provided probable cause. As discussed above, that search was entirely reasonable under the Fourth Amendment.

III.  Conclusion

Jones suffered no prejudice from alleged variances between the indictment and the proof at trial, and the district court acted properly in denying his motion to suppress evidence. For the foregoing reasons, we AFFIRM the decision of the

district court.