*In re* S.R. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Carol Reder, Respondent-Appellant).

Fourth District    No. 4—04—0072

Opinion filed June 25, 2004.

Daniel B. Kennedy, of Champaign, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John R. DeLaMar, of Urbana, guardian *ad litem*.

JUSTICE COOK delivered the opinion of the court:

Respondent, Carol Reder, appeals the dispositional order of the Champaign County circuit court adjudicating her two minor children neglected, declaring them wards of the court, and granting custody and guardianship to the Department of Children and Family Services (DCFS). We affirm in part and reverse in part.

Carol is the adoptive mother of S.R., a girl (born August 23, 1993), D.R., a boy (born May 20, 1996), and a third child not at issue in this appeal. S.R. and D.R. are half-siblings and have spent their childhoods together. Carol is divorced and appears from the record not to have

any current romantic attachments. She first assumed care of S.R. as a foster parent, later adopting her. The record does not show when this happened or how she came to adopt the other children.

On October 17, 2003, S.R. was hospitalized at a facility called the Pavilion because she had been leaving home, accepting rides from strangers, not following directions, and endangering herself. She was defiant and verbally abusive toward the Pavilion staff at first, but her behavior improved after a couple of days. The staff determined that S.R. was no longer a danger to herself and decided to discharge her.

S.R.'s case manager at the Pavilion, Phil Chmielewski, attempted to phone Carol, leaving a message on her home answering machine, but Carol did not return the call. On October 24, Chmielewski called DCFS to tell them that Carol refused to take S.R. back. Sheri Foley, a child protective investigator from DCFS, received a call on the agency's hot line saying that S.R. had been locked out of her home and could no longer return there.

Foley tried to call Carol but was unable to reach her until October 25. Carol told Foley that S.R.'s behavior was out of control and that she did not want to care for her anymore. Foley went to Carol's home and spoke to S.R., learning that Carol had told S.R. that she was going to be adopted by somebody else and would have to behave in her new foster home.

On October 27, 2003, the State filed a petition seeking to have S.R. and D.R. adjudicated neglected. The petition alleged that S.R. was neglected by having been abandoned without a proper plan of care and that D.R. was in an injurious environment based on the neglect of his sister. The trial court held an adjudicatory hearing on December 8, 2003, and issued an order two days later finding the two minors neglected. After a dispositional hearing on January 14, 2004, the court issued the order adjudicating the two minors wards of the court the next day. It is from this order that Carol appeals.

■ We begin our discussion by addressing an argument apparently aimed at the trial court's jurisdiction over this case. Carol states that "[t]he record is silent as to whether [Carol's] former husband was an adoptive parent of S.R. and D.R. and therefore entitled to notice." She cites a case saying that the State must provide notice to a minor's parents in juvenile delinquency proceedings. *In re C.H.*, 277 Ill. App. 3d 32, 35, 660 N.E.2d 545, 547 (1995). That may be true, but nothing in the record suggests that Carol's ex-husband also adopted the children. Moreover, a dispositional report prepared by DCFS states that S.R. had some trouble adjusting to a foster family because she "had not previously had a father in her life." If Carol intends to argue that the court's order is void because her ex-husband was not notified,

we must disagree in the absence of any suggestion that he was a parent of S.R. and D.R.

■ Before turning to the evidence actually presented in the trial court, we must address Carol's argument that the court had a duty to discover certain other evidence. She argues that the court should have uncovered reports from Streamwood Hospital, where S.R. was previously hospitalized, and from S.R.'s school. These reports would have showed, Carol suggests, that S.R. was considerably more out of control than the evidence presented at the adjudicatory hearing indicated. While it is true that the court has the duty to consider a child's best interest in proceedings under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—1 through 7—1 (West 2002)) (*In re D.S.*, 198 Ill. 2d 309, 324, 763 N.E.2d 251, 259 (2001)), the Act does not impose any obligation on the court to do its own factual investigation. *In re Ashley F.*, 265 Ill. App. 3d 419, 424, 638 N.E.2d 368, 371 (1994). In any event, the issue in the adjudicatory hearing was whether Carol abandoned S.R. The extent to which S.R. was out of control in Streamwood Hospital or in school would have had little bearing on whether Carol abandoned her.

■ Carol's central contention on appeal is that the trial court's findings that S.R. and D.R. were neglected were against the manifest weight of the evidence. At an adjudicatory hearing, the State must prove neglect by a preponderance of the evidence. *In re N.B.*, 191 Ill. 2d 338, 343, 730 N.E.2d 1086, 1088 (2000). We will not reverse the trial court's determination unless its findings are against the manifest weight of the evidence, in that the facts clearly demonstrate that the court should have reached the opposite result. *N.B.*, 191 Ill. 2d at 346, 730 N.E.2d at 1090.

Carol first asserts that the State did not sufficiently prove the minors' ages. Both children were found neglected under provisions defining a neglected minor as a "minor under 18 years of age" who is subjected to certain conditions (705 ILCS 405/2—3(1)(a), (1)(b) (West 2002)), but the State did not explicitly present evidence of how old they were. Without deciding the issue of whether a minor's age is an element that must be proved in an adjudicatory hearing, we conclude after reviewing the record that sufficient circumstantial evidence indicated that S.R. and D.R. were indeed minors.

The trial court found that S.R. was a neglected minor on the basis that she was abandoned. See 705 ILCS 405/2—3(1)(a) (West 2002). "Neglect" under the Act generally means "the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of parental duty." *In re M.K.*, 271 Ill. App. 3d 820, 826, 649 N.E.2d 74, 79 (1995). When a parent leaves a

child with another person under circumstances establishing that the parent no longer wishes to care for the child, this can support a finding of neglect, even where the child is not placed in danger. See *In re Walter B.*, 227 Ill. App. 3d 746, 755-56, 592 N.E.2d 274, 281 (1992) (First District) (child left at police station); *In re J.M.*, 245 Ill. App. 3d 909, 921, 613 N.E.2d 1346, 1355 (1993) (Second District) (child left at hospital).

The testimony at the adjudicatory hearing showed that Carol told the case manager of the Pavilion facility, a DCFS child protective investigator, and S.R. herself that she was unwilling to care for S.R. any longer. Carol even went so far as to tell S.R. that she would be adopted by a new family. By the time of the hearing, held December 8, 2003, S.R. had been in foster care for more than a month. Nothing indicates that Carol communicated to DCFS any desire to regain custody of S.R. On this record, we cannot say the trial court's finding as to S.R. was against the manifest weight of the evidence.

Carol points to portions of the dispositional report prepared by DCFS in advance of the dispositional hearing as support for her argument that the trial court's finding was erroneous. According to the report, Carol contacted DCFS on December 23, 2003, to say that she wanted to try to have S.R. returned to her. Based on this new information, DCFS recommended in the report that S.R. be returned to Carol's custody. The problem with Carol's argument is that because this information was not presented at the adjudicatory hearing, it was not part of the evidence on which the court found that S.R. was neglected.

■ We now turn our attention to D.R. The State's petition alleged that he was neglected by being a minor "whose environment is injurious to his welfare when he resides with Carol *** based upon the neglect to his sibling, [S.R.]" The State's theory, sometimes referred to as "anticipatory neglect" (see *In re Arthur H.*, 338 Ill. App. 3d 1027, 1036, 789 N.E.2d 890, 897 (2003)), is that because Carol neglected one child, she is likely to neglect her other child in the future. Although Illinois law recognizes such a concept, there is no *per se* rule that the neglect of one child establishes the neglect of another child in the same household. *In re Edricka C.*, 276 Ill. App. 3d 18, 28, 657 N.E.2d 78, 84 (1995).

The concept of anticipatory neglect is based on the provision of the Act establishing that proof of the abuse or neglect of one minor "shall be admissible evidence on the issue of the abuse [or] neglect *** of any other minor for whom the respondent is responsible." 705 ILCS 405/2—18(3) (West 2002). Although some courts have stated that abuse of a minor's sibling is *prima facie* evidence of the minor's neglect (*Edricka C.*, 276 Ill. App. 3d at 28, 657 N.E.2d at 84), we do not agree that this can be justified under the statute.

When the General Assembly uses a particular phrase in one provision and different language in another, we must assume that it intended different results for each. *In re K.C.*, 186 Ill. 2d 542, 549-50, 714 N.E.2d 491, 495 (1999). Here, subsection (2) lists a number of things that can be "prima facie evidence of abuse or neglect," for instance proof that a parent is a habitual drug user. 705 ILCS 405/2—18(2) (West 2002). Subsection (3), on the other hand, provides that proof of neglect of one child is "admissible evidence" that another was also neglected. 705 ILCS 405/2—18(3) (West 2002). Because of the close proximity of the statutory subsections, we conclude that the General Assembly must have wanted "admissible evidence" to mean something other than *"prima facie* evidence." *"Prima facie* evidence" means "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary 579 (7th ed. 1999). It seems logical that "admissible evidence" in this context means some evidence, but not necessarily sufficient evidence to prove the allegation.

In this case, the record of the adjudicatory hearing contains only limited references to D.R. Foley from DCFS stated that she visited Carol's home and saw a male child. Another DCFS employee testified that she had arranged visits between S.R. and D.R. since S.R. entered foster care and that these visits occurred once a week. This evidence does not suggest that D.R. was placed in an injurious environment. The only evidence of this, therefore, is Carol's abandonment of S.R. In light of the statutory distinction discussed above, we conclude that the trial court's determination that D.R. was a neglected minor because his environment was injurious to his welfare was against the manifest weight of the evidence.

Carol asserts that the State improperly argued that D.R. should be found neglected because it was in his best interests to be with his sister. We need not address this issue because the trial court improperly found D.R. to be neglected. If the State cannot prove abuse or neglect, the petition must be dismissed. *N.B.*, 191 Ill. 2d at 343, 730 N.E.2d at 1088-89. Absent a finding of neglect, the court had no authority to proceed to a dispositional hearing as to D.R. or to make him a ward of the court.

■ Finally, although Carol has not addressed the issue, we note that the trial court acted properly in making S.R. a ward of the court and granting custody and guardianship of her to DCFS. Once the State has proven neglect under the Act, the court holds a dispositional hearing to determine whether it is in the best interests of the minor that she be made a ward of the court. *N.B.*, 191 Ill. 2d at 343, 730 N.E.2d at 1089. By the time of the dispositional hearing in this case,

Carol had expressed her wish to regain custody of S.R. and DCFS had recommended that the court return custody and guardianship to Carol. The court nonetheless determined that it was in S.R.'s best interests to be in the custody of DCFS. Given Carol's recent change of heart about wanting to care for her daughter and her history of having trouble handling her behavior, it was reasonable for the court to decide that S.R. would be better off in the care of DCFS for the time being.

In light of the foregoing, we affirm the trial court's judgment regarding S.R. As to D.R., we reverse the finding of neglect, which necessarily invalidates the dispositional order as to him.

Affirmed in part; reversed in part.

KNECHT, P.J., and STEIGMANN, J., concur.