NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230613-U

NO. 4-23-0613

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|     Petitioner-Appellee, | ) | No. 23JA18 |
|     v. | ) | |
| Mark G., | ) | Honorable |
|     Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed, concluding no issue of arguable merit could be raised on appeal.

¶ 2     In February 2023, the State filed a petition, pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)), alleging M.G., the child of respondent, Mark G., and Melanie M., was a neglected minor. Melanie is not a party to this appeal, and we address the facts relating to Melanie only to the extent they are relevant here. Following an adjudicatory hearing, the trial court found the State proved its petition by a preponderance of the evidence. The case proceeded immediately to a dispositional hearing, after which the court determined: (1) it was in M.G.'s best interest to be made a ward of the court; (2) respondent and Melanie were unfit, unwilling, or unable to care for M.G.; and (3) the Illinois Department of Children and Family Services (DCFS) would be granted guardianship and custody of M.G.

¶ 3 Respondent timely appealed, and this court appointed counsel to represent him. Counsel now moves to withdraw from his representation of respondent, pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending "he cannot in good faith make a non-frivolous argument for reversal." We agree, grant counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5 On February 1, 2023, the State filed a petition alleging M.G. was a neglected minor because her environment was injurious to her welfare. See 705 ILCS 405/2-3(1)(b) (West 2022). At the shelter care hearing held the same day, both respondent and Melanie were present. See *id.* § 2-10 (defining the nature of a shelter care hearing). At the hearing, respondent expressed a desire to proceed *pro se*. The trial court admonished respondent on the risks of proceeding *pro se*, and after these admonishments, respondent persisted in his desire to represent himself. The court then permitted respondent to represent himself in the proceedings. After hearing evidence and argument, the court found "the existence of probable cause, urgent and immediate necessity to remove the minor and reasonable efforts [to prevent the minor's removal] could not have been made given the circumstances."

¶ 6 Two days later, the State filed an amended petition, alleging M.G.'s environment was injurious to her welfare in the following ways: (1) Melanie's substance abuse issues prevented her from properly parenting; (2) M.G. lived in a home where methamphetamine was being distributed; (3) methamphetamine was located inside the home, in an area accessible to M.G.; (4) domestic violence was occurring in M.G.'s presence; and (5) respondent's mental health issues prevented him from properly parenting.

¶ 7 A. Adjudicatory Hearing

¶ 8　　　　　Before the adjudicatory hearing began, Melanie stipulated to count I of the petition and waived her right to a hearing. At the outset, the following exhibits were admitted by the State, without objection by respondent: (1) respondent's medical records from Swedish American Hospital; (2) certified copies of prior indicated reports; (3) certified copies of petitions for orders of protection in Winnebago County case Nos. 20-OP-602 (respondent v. Melanie), 22-OP-2412 (Melanie v. respondent), 23-OP-468 (respondent v. Melanie), and 23-OP-469 (Melanie v. respondent); (4) a certified copy of a petition for an order of protection in Winnebago County case No. 21-OP-533, the petitioner being an individual named Fry, who was not a party to the proceedings in the trial court, against respondent; (5) certificates of conviction for Melanie in Winnebago County case Nos. 15-CF-367 and 10-CF-1632; and (6) criminal complaints against respondent in Winnebago County case Nos. 22-CF-2575, 22-CM-1732, 22-CM-1733, 22-CM-1657, 22-CF-1240, and 22-CF-273. Additionally, over respondent's objection, the State admitted two additional exhibits: certified copies of petitions for orders of protection in Winnebago County case Nos. 23-OP-787 (Sebright v. respondent) and 23-OP-788 (Sebright v. respondent). (Sebright was not a party to the proceedings in the trial court.) Following the admission of this evidence, the State presented testimony from two witnesses.

¶ 9　　　　　　　　　　　　　　1. *Inspector Adam Mears*

¶ 10　　　　　Inspector Adam Mears, a police officer assigned to the Illinois State Police, executed a search warrant on January 31, 2023, at the home Melanie resided in. Before obtaining the warrant, Mears performed surveillance on the residence and a "trash recovery." During the trash recovery, he located "evidence of narcotics as well as evidence of possible identity theft," along with mail for Melanie and respondent. When the warrant was executed, the officers located Melanie, M.G., and two other adults inside the residence. During the search, the officers located

13 grams of methamphetamine, along with a container which tested positive for methamphetamine in the kitchen, near children's toys.

¶ 11    On cross-examination, Mears acknowledged he never observed respondent at the residence, either before or during the execution of the warrant. Additionally, Mears knew there was a valid order of protection preventing respondent from being at the residence "at the time that [he] conducted the search warrant."

¶ 12    2. *Amanda Moren*

¶ 13    Amanda Moren, an investigator for DCFS, took protective custody of M.G. following the execution of the warrant at M.G.'s residence. Moren spoke with M.G. on February 1, 2023, and during that conversation, M.G. told Moren domestic violence was occurring within the home. M.G. stated Melanie and respondent fought in her presence and respondent "yells very loud at her, makes her afraid, and hurts her ears when he hells [*sic*]." During her investigation, Moren learned respondent had mental health issues after she located police reports "about him wanting to kill himself and being brought to the hospital for evaluation." According to Moren, DCFS did not believe it was appropriate to place M.G. with respondent because (1) the search warrant was executed on his residence, (2) he had a history of mental health issues, and (3) there were reports of domestic violence between respondent and Melanie.

¶ 14    On cross-examination, Moren acknowledged there was an order of protection preventing respondent from being at his residence "during the time period [in] which the raid occurred." However, M.G. told her respondent was at the residence on January 31 but left before the police arrived. Moren could not recall whether anyone else was present during her interview with M.G. but insisted she followed DCFS procedures when conducting the interview. According to Moren, M.G.'s statements during the interview were credible.

¶ 15                                3. *The Parties' Arguments*

¶ 16            After Moren's testimony, the State rested. No other party presented any evidence.

¶ 17            The State asked the trial court to find it met its burden on all counts. In support of

its position, the State highlighted the evidence regarding (1) Melanie's drug usage, (2) drugs being

located in the home M.G. resided in, (3) respondent's medical records, which demonstrated a

history of mental illness, (4) M.G.'s statements regarding domestic violence between Melanie and

respondent, and (5) the multiple petitions for orders of protection, which demonstrated a history

of domestic violence between the parties.

¶ 18            During his argument, respondent conceded the State met its burden on counts I

through IV, but he argued it failed to meet its burden on count V. Respondent asserted his medical

records, which documented a mental health episode, were from two years prior and thus were not

relevant to his current ability to parent.

¶ 19            The trial court took the matter under advisement and informed the parties it would

announce its decision at the next court date.

¶ 20                                4. *Trial Court's Findings*

¶ 21            The trial court began by stating, "[T]he State's burden is to prove one count, at least

one count or only one count of the petition. They don't have a legal obligation to prove all five

counts in order to succeed." It then found the State proved counts I through IV of its petition by a

preponderance of the evidence. The court dismissed count V after finding the State failed to meet

its burden on that count.

¶ 22                                B. Dispositional Hearing

¶ 23            The matter proceeded immediately to a dispositional hearing. At the outset, the trial

court noted a report was filed in preparation for the hearing and inquired whether respondent had

an opportunity to review it. Respondent stated he had an opportunity to review the report prior to the hearing. The court took judicial notice of the report, the testimony from the adjudicatory hearing, and the integrated assessment. Melanie's counsel then interjected to state Melanie wished to waive her right to the hearing and stipulate that "guardianship and custody [of M.G.] should remain with DCFS."

¶ 24     The trial court then asked respondent for his "input." Respondent argued the report was inaccurate and misleading in the following ways: (1) the petitions for orders of protection only included allegations and there was no evidence the information contained within the petitions was true, (2) although respondent owned the residence where the search warrant was executed, he was not living there due to an active order of protection, which prevented him from residing in his home, (3) the report infers respondent has a substance abuse problem without any evidence supporting that inference, and (4) the report claimed respondent is an alcoholic, even though his medical records prove he is allergic to alcohol.

¶ 25     After respondent's argument, the trial court found (1) it was in M.G.'s best interest to be adjudicated a ward of the court and (2) both parents were unfit, unwilling, or unable to care for M.G. With respect to respondent, the court took judicial notice of respondent's incarceration and stated, "[Respondent] is unable. I do believe that he could be subject to perhaps a mental health assessment to see if he does have a diagnosis. It does appear that if he is released and taking his prescribed medication that his mental health issues are managed well." Based on its finding, the court granted custody and guardianship of M.G. to DCFS and ordered the parties to comply with any service plans created by DCFS.

¶ 26     Respondent timely filed a notice of appeal and this court appointed counsel to represent him. Counsel filed a motion to withdraw from his representation of respondent and

supported his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit. Notice of counsel's motion was sent to respondent's last known address and this court granted respondent the opportunity to file a response. Respondent failed to respond.

¶ 27                                    II. ANALYSIS

¶ 28          Counsel seeks to withdraw from his representation of respondent, contending there are no meritorious issues for review. In support of his motion, counsel filed a memorandum of law, which states he has considered whether there are any meritorious arguments the trial court's findings at the adjudicatory and dispositional hearings were against the manifest weight of the evidence. Counsel determined such arguments would be frivolous and without merit. After examining the record, the motion to withdraw, and counsel's memorandum of law, we agree respondent's appeal presents no potentially meritorious issues for review and, accordingly, we grant appellate counsel's motion to withdraw and affirm the court's judgment.

¶ 29                    A. Adjudication of Wardship Procedure

¶ 30          "A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985)). The Act sets forth the procedure the trial court must follow in determining "whether a minor should be removed from his or her parents' custody and made a ward of the court." *In re A.P.*, 2012 IL 113875, ¶ 18.

¶ 31          After the State files a petition for adjudication of wardship, the trial court must hold an adjudicatory hearing, where the State presents evidence in support of its petition. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1068 (2009). The burden is on the State to prove the allegations in its petition by a preponderance of the evidence. *In re S.R.*, 349 Ill. App. 3d 1017, 1020 (2004). Our supreme

court has determined " '[t]he *only question* to be resolved at an adjudicatory hearing is whether or not a child is [abused or] neglected, and not whether every parent is [abusive or] neglectful.' " (Emphasis added.) *In re Z.L.*, 2021 IL 126931, ¶ 59 (quoting *Arthur H.*, 212 Ill. 2d at 467). "Only a single ground for [abuse or] neglect need be proven, and thus when the circuit court has found a minor [abused or] neglected on several grounds, we may affirm if any of the circuit court's bases *** may be upheld." *In re Faith B.*, 216 Ill. 2d 1, 14 (2005).

¶ 32 If the trial court determines the State has proven by a preponderance of the evidence the minor is abused or neglected, the case proceeds to a dispositional hearing. *Jay. H.*, 395 Ill. App. 3d at 1068. At the dispositional hearing, the court must answer two questions. First, "whether it is in the best interests of the minor and the public that the minor be made a ward of the court" 705 ILCS 405/2-22(1) (West 2022). Second, if the minor is made a ward of the court, what is the proper disposition for the minor, considering "the health, safety and interests of the minor and the public." *Id*. When answering the second question, the court must determine whether "the parents are unfit or unable *** 'to care for, protect, train[,] or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of *** her parents.' " *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008) (quoting 705 ILCS 405/2-27(1) (West 2006)). If the court determines the parents are unfit, unwilling, or unable and the best interest of the minor would be jeopardized if the minor remains in the parents' custody, it may grant custody and guardianship of the minor to DCFS. *Id*.

¶ 33  B. Trial Court's Finding M.G. Was Neglected

¶ 34 "On review, a trial court's finding of [abuse or] neglect will not be reversed unless it is against the manifest weight of the evidence." *A.P.*, 2012 IL 113875, ¶ 17. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id*.

¶ 35    The evidence in this case supported the trial court's determinations. Here, the court heard testimony from Inspector Mears regarding the search warrant executed on the residence respondent owned and Melanie lived in. During the execution of the warrant, officers located methamphetamine in a place where it was accessible to M.G. This testimony was sufficient to prove the allegations in counts II and III of the State's petition. Investigator Moren also testified about statements from M.G. regarding domestic violence between respondent and Melanie. The State admitted multiple petitions for orders of protection filed by either respondent or Melanie against the other. These facts were sufficient to prove the allegations in count IV. Based on a review of the record, there was sufficient evidence presented for the court to determine M.G. was a neglected minor by a preponderance of the evidence.

¶ 36    Counsel notes in his memorandum of law the trial court erred in admitting certain evidence at the adjudicatory hearing. This evidence includes petitions for orders of protection filed by individuals other than Melanie and respondent, petitions for orders of protection filed more than three years prior to the adjudication, testimony from Investigator Moren about M.G.'s uncorroborated statements, and criminal complaints against respondent. Although counsel mentions this error, he concludes it was harmless and did not affect the outcome of the proceedings. We agree.

¶ 37    Assuming, *arguendo*, the trial court erred in admitting this evidence, this court has long held "[e]rrors in the admission of evidence may be deemed harmless where ample evidence supported the court's neglect finding." *In re J.C.*, 2012 IL App (4th) 110861, ¶ 29. As outlined above, there was ample evidence presented to support the court's finding M.G. was neglected by a preponderance of the evidence. Therefore, even if this court were to disregard the evidence counsel claims was admitted in error, there would still be sufficient evidence for the court to find

M.G. was neglected.

¶ 38    Based on the evidence presented, we agree with counsel any argument the trial court's finding M.G. was a neglected minor was against the manifest weight of the evidence would be meritless. The court's determination is supported by the record and is not against the manifest weight of the evidence.

¶ 39            C. Trial Court's Finding Respondent Was Unfit

¶ 40    A trial court's decision at a dispositional hearing "will be reversed only if the findings of fact are against the manifest weight of the evidence." *J.W.*, 386 Ill. App. 3d at 856. "In contrast to the adjudicatory hearing, where the court determines only whether the child is abused or neglected, the wardship determination at the dispositional hearing 'is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life.' " (Emphasis omitted.) *In re M.D.*, 2022 IL App (4th) 210288, ¶ 64 (quoting *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15). Because of this, "[t]he court may consider evidence of parental deficiencies in the child's environment beyond those alleged in the petition." *Id*. ¶ 65.

¶ 41    In this case, the trial court found respondent was unable to care for M.G. due to his incarceration. We note the court informed respondent of this at the outset of the hearing, before it asked respondent for his "input." Even after the court's statement about his incarceration, respondent presented no evidence or argument regarding a potential release date or why his incarceration should not be considered when determining whether he was able to care for M.G. Because the court properly considered respondent's incarceration when determining respondent's ability to care for M.G., its decision is not against the manifest weight of the evidence.

¶ 42    Consequently, we agree with counsel any argument the trial court's finding respondent was unable to care for M.G. due to his incarceration was against the manifest weight

of the evidence would be meritless. The court's determination is supported by the record and not against the manifest weight of the evidence.

¶ 43                                    III. CONCLUSION

¶ 44          Because respondent's appeal presents no potentially meritorious issues for review, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 45          Affirmed.