2025 IL App (4th) 250594-U

NO. 4-25-0594

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
October 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| In re M.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|       Petitioner-Appellee, | ) | No. 24JA236 |
|       v. | ) | |
| Ashley M., | ) | Honorable |
|       Respondent-Appellant). | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Harris and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2    In December 2024, the State filed a petition pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)), alleging M.M. (born June 2017), the child of respondent, Ashley M., and Kenneth H., was a neglected minor. Following a joint adjudicatory and dispositional hearing, the trial court entered orders adjudicating M.M. neglected and finding respondent unfit and Kenneth H. unable. Respondent timely filed a notice of appeal, and counsel was appointed to represent her. (Kenneth H. is not a party to this appeal.) Respondent's appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending "an appeal in this case would be frivolous." See *In re S.M.*, 314 Ill. App. 3d 68, 685-86 (2000) (holding *Anders* applies to termination of parental

rights cases). We agree and grant counsel's motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        On December 12, 2024, the State filed a petition, alleging M.M. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2024)). The petition alleged the Illinois Department of Children and Family Services (DCFS) began providing intact services to respondent in January 2024, following a domestic incident between respondent and one of her children, T.J. (born November 2006). Respondent was intoxicated during this domestic incident. Between January 2024 and May 2024, there were multiple occasions when the intact caseworker observed respondent "passed out drunk" while M.M. and T.J. were in the home. Respondent completed inpatient treatment in July 2024. However, following respondent's release from treatment, the caseworker received multiple calls from T.J. "asking the worker to come to the home because [respondent] was intoxicated and they were fighting." Following these calls, DCFS requested respondent submit to weekly drug and alcohol testing. Respondent tested positive for alcohol on August 15 and refused to submit to further testing. On August 28, 2024, the caseworker was "informed about a fight between [respondent] and [T.J.]" When the caseworker arrived at the home, respondent was intoxicated. The caseworker informed respondent she needed to enter a residential detox program, and respondent refused. Subsequently, respondent refused to cooperate with intact services and refused to allow the caseworker to visit T.J. and M.M.

¶ 5        That same day, the trial court entered a temporary custody order, finding (1) there was probable cause for the State's petition, (2) there was an immediate and urgent necessity to remove M.M. from the home, and (3) reasonable efforts were made to keep M.M. in the home, but that did not eliminate the need for M.M.'s removal. The court granted temporary custody and

guardianship of M.M. to DCFS. We note there was no report of proceedings from the shelter care hearing provided as part of the record on appeal. However, according to the court's written order, respondent received notice and was present at the hearing.

¶ 6 On January 31, 2025, respondent filed an answer to the State's petition, which stated, "Respondent neither admits nor denies the allegations of Count(s) I and stipulates that the Petition can be proven by the preponderance of, or by clear and convincing evidence as presented by the State and does not demand strict proof." That same day, the trial court entered a written order, which indicated respondent filed an answer to the State's petition and the case was set for "entry of adjudication and disposition."

¶ 7 Prior to the joint adjudicatory and dispositional hearing, the Center for Youth and Family Solutions (CYFS), the agency assigned to respondent's case, filed a dispositional hearing report. The report indicated respondent completed inpatient treatment in July 2024 and was "engaged in drug drops, counseling, [Alcoholics Anonymous] meetings, and fully cooperating with *** the agency." Additionally, respondent had attended and actively participated in all scheduled visits with M.M. The report also included a chart with the results of respondent's drug drops. Between January 9 and March 24, 2025, respondent was asked to complete 12 drops: respondent completed 5, which were all negative, 3 were "denied due to not being approved in time," and respondent failed to appear for 4.

¶ 8 In addition to the dispositional hearing report, CYFS also filed a "status alert" on May 29, 2025. The status alert indicated on February 10 and February 24, 2025, respondent failed to attend the substance abuse treatment group at Trillium. When McKenzie, the case manager at Trillium, contacted respondent about her absences, respondent told McKenzie she was not required to attend the group. Respondent appeared for the group on March 31, 2025, but McKenzie

suspected respondent was intoxicated. Kystal, a substance abuse counselor, pulled respondent from the group, and she "self-reported drinking" when confronted by Krystal. However, during follow-up conversations between respondent, the caseworker, and Trillium staff, respondent denied admitting to alcohol use. The status alert also included another chart with the results of respondent's drug drops. Between March 24 and May 23, 2025, respondent was asked to complete nine additional drops: respondent completed six, which were all negative, and failed to appear for three.

¶ 9       On May 30, 2025, the trial court held a joint adjudicatory and dispositional hearing. The court admonished respondent as to her rights with respect to the State's petition and inquired whether respondent still wished to stipulate to the allegations in the petition. After a discussion with her attorney, respondent affirmed her desire to stipulate to the petition and agreed she was doing so "freely and voluntarily." The State then proffered a factual basis for the allegations and admitted State's exhibit A in support of its proffer. Based on respondent's stipulation and the proffered factual basis, the court found the State proved by a preponderance of the evidence M.M. was a neglected minor "by way of injurious environment." The court then proceeded immediately to a dispositional hearing.

¶ 10       The trial court inquired whether any parties had edits to the dispositional report or status alert filed by CYFS, and no party indicated they did. The State advised it had no evidence to present, only argument. Respondent called Mae Summers, the CYFS caseworker assigned to her case. Summers testified she did not believe respondent relapsed because "[there was] back and forth between what [respondent] has said along with Trillium ***—it's just been contradictory on and off." On cross-examination by the State, Summers acknowledged both McKenzie and Krystal from Trillium informed her that respondent admitted to relapsing. After Summers's testimony, the

guardian *ad litem* provided a brief update on M.M. and her foster placement.

¶ 11　　　　Following the parties' arguments, the trial court found respondent unfit pursuant to section 2-3(1)(b) of the Juvenile Court Act. In its oral ruling, the court highlighted respondent's severe alcohol problem and noted it found the Trillium providers more credible than respondent regarding respondent's relapse. The court acknowledged sobriety was a long, bumpy road but admonished respondent it was more important for her to be honest than perfect. According to the court, respondent needed to demonstrate "a sustained period of sobriety with [the] drops" before M.M. would be returned to her care. After issuing its oral ruling, the court scheduled the case for an expedited permanency review and ordered the caseworker to maximize visitation between respondent and M.M.

¶ 12　　　　This appeal followed.

¶ 13　　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　On appeal, respondent's counsel moves to withdraw, contending "an appeal in this case would be frivolous." In support of her motion to withdraw, counsel submitted a memorandum of law providing a statement of facts and argument as to why respondent's potential claims lack merit. Counsel provided proof of service of her motion and memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to file a response. After examining the record and counsel's motion to withdraw, we find respondent's appeal presents no potentially meritorious issues for review and, accordingly, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 15　　　　　　　　　　A. Adjudication of Wardship

¶ 16　　　　"A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d

441, 463 (2004) (quoting *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985)). The Juvenile Court Act sets forth the procedure the trial court must follow in determining "whether a minor should be removed from his or her parents' custody and made a ward of the court." *In re A.P.*, 2012 IL 113875, ¶ 18.

¶ 17 After the State files a petition for adjudication of wardship, the trial court must hold an adjudicatory hearing, where the State presents evidence in support of its petition. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1068 (2009). The burden is on the State to prove the allegations in its petition by a preponderance of the evidence. *In re S.R.*, 349 Ill. App. 3d 1017, 1020 (2004). If the trial court determines the State has proven by a preponderance of the evidence the minor is abused or neglected, the case proceeds to a dispositional hearing. *Jay. H.*, 395 Ill. App. 3d at 1068.

¶ 18 At the dispositional hearing, the trial court must answer two questions. First, "[is it] in the best interests of the minor and the public that the minor be made a ward of the court?" 705 ILCS 405/2-22(1) (West 2024). Second, if the minor is made a ward of the court, what is the proper disposition for the minor, considering "the health, safety and interests of the minor and the public?" *Id.* When answering the second question, the court must determine whether "the parents are unfit or unable *** 'to care for, protect, train[,] or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of *** her parents.' " *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008) (quoting 705 ILCS 405/2-27(1) (West 2006)). If the court determines the parents are unfit, unwilling, or unable and the best interest of the minor would be jeopardized if the minor remains in the parents' custody, it may grant custody and guardianship of the minor to DCFS. *Id.*

¶ 19 1. *Trial Court's Finding M.M. Was Neglected*

¶ 20 "On review, a trial court's finding of [abuse or] neglect will not be reversed unless

it is against the manifest weight of the evidence." *A.P.*, 2012 IL 113875, ¶ 17. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 21    Here, respondent stipulated to the allegations contained in the State's petition and the State proffered a factual basis to support those allegations. The allegations demonstrated respondent had a severe alcohol addiction, and when respondent was intoxicated, she acted aggressively toward her children. Moreover, despite successfully completing treatment in July 2024, respondent relapsed. Following respondent's relapse, she refused to cooperate with intact services and refused to allow the caseworker to check on the welfare of M.M. and T.J. Based on this evidence, the trial court's finding that the State proved M.M. was a neglected minor was not against the manifest weight of the evidence.

¶ 22    2. *Trial Court's Finding Respondent Was Unfit*

¶ 23    A trial court's decision at a dispositional hearing "will be reversed only if the findings of fact are against the manifest weight of the evidence." *J.W.*, 386 Ill. App. 3d at 856. "In contrast to the adjudicatory hearing, where the court determines only whether the child is abused or neglected, the wardship determination at the dispositional hearing 'is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life.' " (Emphasis omitted.) *In re M.D.*, 2022 IL App (4th) 210288, ¶ 64 (quoting *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15). Because of this, "[t]he court may consider evidence of parental deficiencies in the child's environment beyond those alleged in the petition." *Id.* ¶ 65.

¶ 24    In this case, the trial court's finding respondent was unfit was not against the manifest weight of the evidence. The reports filed by CYFS prior to the hearing demonstrated respondent was not consistently participating in outpatient substance abuse treatment. The reports noted respondent successfully completed inpatient treatment in July 2024; however, this was prior

to the State filing its petition. Moreover, according to workers at Trillium, respondent appeared intoxicated at a group session and admitted to relapsing. This is particularly concerning when coupled with the fact that respondent successfully completed inpatient treatment but later relapsed and refused to cooperate with intact services. Although respondent denied relapsing, the court specifically noted it found the Trillium workers more credible than respondent because the workers had no motivation to lie about respondent. In addition to respondent's failure to consistently participate in outpatient treatment, the reports indicated respondent was asked to submit to 21 drops between January 2025 and May 2025 and she failed to appear for a third of those drops. Consequently, based on the evidence presented at the hearing, the court's decision was not against the manifest weight of the evidence.

¶ 25                                    B. Ineffective Assistance of Counsel

¶ 26            This court evaluates claims of ineffective assistance of counsel in proceedings under the Juvenile Court Act using the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *In re Br. M.*, 2021 IL 125969, ¶ 43 ("We recognize that there are differences between criminal law proceedings and proceedings under the Juvenile Court Act, but the *Strickland* standard, because of its familiarity and simplicity, offers a helpful structure to guide our analysis."). To prevail on a claim of ineffective assistance of counsel, a respondent must establish: "(1) representation that fell below an objective standard of reasonableness [citation] and (2) a reasonable probability that the result of the proceeding would have been different but for the objectively unreasonable representation." *In re I.W.*, 2018 IL App (4th) 170656, ¶ 46. "Failure to satisfy either prong precludes a finding of ineffective assistance of counsel." *In re A.P.-M.*, 2018 IL App (4th) 180208, ¶ 41.

¶ 27            A review of the record belies any contention respondent received ineffective

assistance of counsel. At the hearing, respondent's counsel called the caseworker, who testified she did not believe respondent relapsed, and argued respondent should not be found unfit. There is nothing in the record to demonstrate respondent's counsel's performance fell below an objective standard of reasonableness, and as such, any claim of ineffective assistance of counsel would be without merit.

¶ 28                                    III. CONCLUSION

¶ 29            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30            Affirmed.