NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260238-U

NO. 4-26-0238

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 22, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | No. 25JA100 |
| v. | ) | |
| Anthony C., | ) | Honorable |
| Respondent-Appellant). | ) | Chad M. Long, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Doherty and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no meritorious issues could be raised on appeal.

¶ 2    In September 2025, the State filed a petition pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)), alleging A.C. (born September 2025), the child of respondent, Anthony C., and Madisyn S. (who is not a party to this appeal), was a neglected minor. Following separate adjudicatory and dispositional hearings, the trial court entered orders adjudicating A.C. neglected and finding respondent unfit and unable to care for A.C. Respondent appealed, and counsel was appointed to represent him. Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis she cannot raise any potentially meritorious arguments on appeal. For the reasons that follow, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4                            A. The Neglect Petition

¶ 5        In September 2025, the State filed a petition seeking to adjudicate A.C. neglected under the Juvenile Court Act, contending his environment was injurious to his welfare. See 705 ILCS 405/2-3(1)(b) (West 2024). The State alleged the following information in support of the petition. Respondent was found unfit in his other child's case (Knox County case No. 24-JA-136); he did not complete any services (including a sex offender assessment and treatment, a substance abuse assessment and treatment, random drug screens, a mental health assessment and treatment, and parenting classes); after a caseworker contacted respondent while he was at the Knox County jail, he yelled at the caseworker and told her to "never *** come back"; he was found guilty of a violation of the sex offender registry and aggravated battery/use of a deadly weapon; and as of July 3, 2025, he was incarcerated in the Illinois Department of Corrections after receiving a three-year prison sentence.

¶ 6                            B. The Adjudicatory Hearing

¶ 7        In December 2025, the trial court conducted an adjudicatory hearing. The court began by acknowledging respondent's signed stipulation to the allegations in the State's neglect petition. The court then admonished respondent of the rights he would be giving up to "make sure that [respondent] knowingly, understandingly, and voluntarily" entered the stipulation. The court questioned whether respondent understood that by stipulating to the neglect petition, he would be giving up those rights. Respondent stated "Yes, sir." The court explained it would hear a factual basis from the State, and if it found respondent's stipulation and the factual basis sufficient, it would find A.C. neglected and schedule a dispositional hearing. The court also explained the different possibilities that could follow and what could happen following a

dispositional hearing. The court then showed respondent the signed stipulation and asked whether it was his signature on the form and if anyone had made any threats or promises, or forced him to sign. Respondent confirmed it was his signature and no one had made any threats or promised or forced him to sign. The court asked whether respondent had the opportunity to go over the stipulation with his attorney and whether his attorney answered any questions to his satisfaction. Respondent answered yes to both questions. Respondent had no questions, but he did comment that he was currently incarcerated, with a year left until his release.

¶ 8        The trial court accepted respondent's stipulation to the State's allegation of neglect and adjudicated A.C. neglected. The court found the allegations in the petition had been proven by a preponderance of the evidence on the stipulations, which the court found to be knowingly, understandingly, and voluntarily made. The court also found neglect was inflicted by both parents and the placement of the child within the home was contrary to the health, welfare, and safety of the minor child.

¶ 9                              C. The Dispositional Hearing

¶ 10       The trial court conducted a dispositional hearing in February 2026. The court began by acknowledging it had received the dispositional hearing report (report) and the family service plan. Both were admitted into evidence.

¶ 11       According to the report, respondent had been incarcerated at Pinckneyville Correctional Facility since July 2025 for failing to report weekly with his probation officer and having no address. Respondent was required to register as a sex offender. A second juvenile case involving his daughter was opened in December 2024. Respondent was willing to engage in a mental health assessment and counseling once he was released on probation. He was not engaged in services at the time of the report but had signed up for a parenting class and was on the

waiting list. Respondent admitted to using methamphetamine and other drugs in the past, and he was willing to participate in a substance use assessment and/or counseling once he was released. According to the report, respondent had limited visits with his daughter and a scheduled visit was canceled due to respondent fighting and not being able to have visits. A visit with his son, A.C., was scheduled for December 2026 at the prison. The caseworker recommended A.C. be made a ward of the court and the Illinois Department of Children and Family Services (DCFS) be named as guardian, with the right to consent to placement and medical treatment. The caseworker also listed a variety of tasks for respondent to correct the conditions that led to adjudication that included, *inter alia*, cooperating with DCFS.

¶ 12        The family service plan revealed respondent's unsatisfactory progress, noting respondent had not begun any services. Respondent was not compliant with the sex offender registry and had not participated in a sex offender assessment or treatment. He had not participated in a substance abuse assessment or treatment, nor had he participated in any random drug screens. Respondent had not completed a mental health assessment or treatment and had not participated in any parenting education classes. Because respondent was incarcerated, he was unable to maintain appropriate housing or demonstrate he could support himself or his child.

¶ 13        The State contended respondent should be found unfit, arguing he was incarcerated and it was not clear if he had completed any services. Respondent's counsel argued respondent did try to cooperate and access services, but he had difficulty due to his incarceration. Respondent claimed he had finished a parenting class and the certification was supposed to have been e-mailed to a caseworker.

¶ 14        The trial court considered the report and family service plan, heard the arguments and recommendations from the parties, and determined it was consistent with A.C.'s health,

welfare, and safety that he be made a ward of the court. The court noted respondent had been found unfit in his older child's case and his fitness had not been restored. Respondent had a history of substance abuse issues, and he was incarcerated at the time of the hearing. Due to his incarceration, the court found respondent unfit and unable to parent A.C. The permanency goal was set to return home within 12 months, and the services contained in the family services plan were appropriate to facilitate that goal. The court entered the dispositional order, granting the State's neglect petition and adjudicating A.C. neglected, and found respondent unfit, made A.C. a ward of the court, and placed him in the guardianship and custody of DCFS.

¶ 15        This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17        On appeal, appointed counsel asserts she can raise no colorable argument the trial court erred in (1) finding respondent's stipulation was voluntarily and intelligently made or (2) finding respondent unfit. Therefore, she seeks to withdraw as counsel pursuant to *Anders*. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8 (holding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from a final judgment in a juvenile neglect case under the Juvenile Court Act). Under *Anders*, counsel is required to (1) briefly set forth the arguments supporting any potential issue on appeal, (2) explain the reasons those arguments are frivolous, and (3) conclude the case presents no viable grounds for appeal. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Along with her motion to withdraw and brief in support, counsel filed a certificate indicating she had mailed a copy of her motion to withdraw and brief to respondent. Respondent has not filed a response.

¶ 18        We agree with counsel's conclusion there are no issues of arguable merit to be raised on appeal, and therefore, we grant's counsel's motion to withdraw and affirm the trial

court's judgment.

¶ 19             A. Respondent's Stipulation to the Neglect Petition

¶ 20        The Juvenile Court Act sets forth a two-step process for deciding whether a minor should be removed from the parents' custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. The first step, after the State files a petition for adjudication of wardship, is the adjudicatory hearing, where the State presents evidence in support of its petition. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1068 (2009). The burden is on the State to prove the allegations in its petition by a preponderance of the evidence. *In re S.R.*, 349 Ill. App. 3d 1017, 1020 (2004).

¶ 21        Here, respondent stipulated to the allegations in the State's petition. Illinois courts have held, "for a parent's admission to be valid in an adjudicatory phase of a neglect proceeding[,] it must be intelligently and voluntarily made. [Citation.] This knowing and voluntary requirement protects a parent from admitting to neglect or abuse when their conduct does not fall within the State's allegations." *In re M.H.*, 196 Ill. 2d 356, 366 (2001).

¶ 22        Prior to accepting respondent's stipulation, the trial court engaged in an extensive colloquy with respondent, explaining his rights and the implications of stipulating to the allegations in the petition to "make sure that [respondent] knowingly, understandingly, and voluntarily" entered the stipulation. The court confirmed respondent understood his rights, had a chance to speak with his attorney, who answered all his questions to his satisfaction, and had no questions for the court. The court also confirmed it was respondent's signature on the written stipulation and he was not promised anything or forced into signing it. Accordingly, respondent's stipulation was entered into voluntarily and with full knowledge and informed intent. Therefore, we agree with counsel any argument to the contrary would be frivolous.

¶ 23             B. Dispositional Finding of Unfitness

¶ 24    If the trial court determines at the adjudicatory stage that a minor is abused or neglected, then it moves to the next step in the Juvenile Court Act, which is the dispositional stage. *Jay. H.*, 395 Ill. App. 3d at 1068. At this stage, the trial court determines whether the best interests of the minor and the public require the minor to be made a ward of the court. 705 ILCS 405/2-22(1) (West 2024). In considering wardship, the court must decide whether the parent is unfit, unable, or unwilling, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the child, and whether the health, safety, and best interests of the child will be jeopardized if the child remains in the parent's custody. *Id.* § 2-27(1). "In contrast to the adjudicatory hearing, where the court determines only whether the child is abused or neglected, the wardship determination at the dispositional hearing is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life." (Emphasis omitted and internal quotation marks omitted.) *In re M.D.*, 2022 IL App (4th) 210288, ¶ 64. Because of this, "[t]he court may consider evidence of parental deficiencies in the child's environment beyond those alleged in the petition." *Id.* ¶ 65.

¶ 25    "At the dispositional phase, the State bears the burden of proving unfitness by a preponderance of the evidence." *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51. We will not reverse a trial court's dispositional order unless it is against the manifest weight of the evidence. *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). A decision is against the manifest weight of the evidence only if the opposite conclusion is readily apparent. *In re M.I.*, 2016 IL 120232, ¶ 21.

¶ 26    The record indicates there are no valid grounds to challenge the trial court's decision that respondent is unfit and unable to care for A.C. The evidence presented at the dispositional hearing reflects respondent was serving a three-year prison sentence for aggravated battery/use of a weapon. He had a history of substance abuse issues and was a registered sex

offender who was not compliant with the registry requirements. In addition, respondent was unfit in his other child's case, had never been restored to fitness, and had not completed any services. While he may have attempted to complete a parenting class in prison, this single attempt at completing services does not skew the dispositional order toward being against the manifest weight of the evidence.

¶ 27 Time spent incarcerated is not excluded from a determination of reasonable progress at a termination proceeding. See *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89. The same remains true at the dispositional stage, where parental rights are not even at issue. Respondent's incarceration renders him unable to provide a home and support for A.C. This, along with respondent's inability to meaningfully engage in services and his failure to do so in his other child's case, establishes he is unable to meet minimum parenting standards and provide a safe and stable home environment. It bears repeating, in considering wardship, the court must decide whether the health, safety, and best interests of the child will be jeopardized if the child remains or is placed in the parent's custody. 705 ILCS 405/2-27(1) (West 2024). The finding of the court was not against the manifest weight of the evidence. Accordingly, we agree with appellate counsel that any argument challenging the court's dispositional order would be frivolous.

¶ 28                                   III. CONCLUSION

¶ 29 For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30 Affirmed.